**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Civil Action Number:

JUAN CARLOS GIL,

      Plaintiff,

vs.

SMARTSTOP SELF STORAGE, INC.
d/b/a SmartStop Self Storage and
www.smartstopselfstorage.com,

      Defendant

---

## COMPLAINT

---

      COMES NOW Plaintiff Juan Carlos Gil ("Plaintiff"), by and through his undersigned counsel, and hereby files this Complaint and sues Defendant SmartStop Self Storage, Inc. ("Defendant") for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36 and alleges as follows:

### INTRODUCTORY STATEMENT

      1.     Plaintiff brings this action in Federal Court to stop the exclusion of blind, vision impaired, and low vision patrons of Defendant's business.

      2.     Businesses can make choices (unlike visually impaired individuals) and can either make their business inclusive, or they can make them effective **Zones of Discrimination**.

3.     When business owners offer services that are inaccessible and then do not notice the public that those services are inaccessible (to the visually impaired),  those business owners are not only marginalizing the visually impaired community, but are actively excluding those members of the public who are visually impaired from their business.

4.     This case arises out of the fact that Defendant has operated its business in a manner and way that completely excludes individuals who are visually impaired from access to Defendant's business based upon Defendant's failure to provide auxiliary aids and services for effective communications.

5.     Defendant operates as a public self-storage company.  Through its various subsidiary companies, Defendant owns and operates places of public accommodation which are a chain of self-storage facilities which offer interior (building) storage, exterior (garage or lot storage), and office spaces for rent under the brand name "SmartStop Self Storage." SmartStop Self Storage facilities offer to the public self-storage areas ranging from small 4 by 4 foot spaces to garage-sized storage spaces, as well as offer locks and other storage supplies for purchase on-site, which is heretofore referenced as "goods and services."

6.     This complaint seeks declaratory and injunctive relief to correct Defendant's policies and practices to include measures necessary to ensure compliance with federal law, to provide auxiliary aids and services for effective communication in Defendant's business (which includes Defendant's Website) so that Plaintiff (and other individuals who are visually impaired) can access and communicate with Defendant effectively and timely such that their access to Defendant's places of public

accommodation (which are self-storage facilities) are not impeded; as such impediment has rendered Defendant's physical places of accommodation not fully accessible to the visually impaired.

## JURISDICTION & VENUE

7.      This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access and effective communications with Defendant's business.

8.      Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant is conducting business within the jurisdiction of this court by virtue of the fact its website is available to the general public within this district and the acts constituting the violation of the ADA occurred in this District. Further, several SmartStop Self Storage facilities are located in the district.

9.      Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

### Juan Carlos Gil

10.      Plaintiff Juan Carlos Gil (also referenced as "Plaintiff") is a resident of the state of Florida and resides within the state of Florida, is *sui juris*, is disabled as defined by the ADA.

11.      Plaintiff is legally blind due to optic nerve damage, has cerebral palsy, is unable to walk, is confined to a wheelchair, and as such, is a member of a protected class  under the ADA, 42 U.S.C. § 12102(1)-(2) and the regulations implementing the ADA as  set forth at 28 CFR §§ 35 *et seq.*

12.     Plaintiff is an athlete who travels for his athletic triathlon endeavors, and also is an advocate for the rights of blind and wheelchair bound disabled individuals (like himself). In the past year, Plaintiff has traveled to Arizona, Orlando, and Boston to attend various conventions and meetings to advance the rights of the disabled. Such events include, but are not limited to, the National Federation for the Blind convention in Orlando[1], the American Counsel for the Blind convention in Nevada, and various focus groups and meetings throughout the east coast (including New York and Boston).

13.     Plaintiff cannot use the computer/internet without the assistance of commercially available screen reader software to interface with the internet and websites located therein.

14.   Plaintiff requires that electronic document information be saved in an accessible format such as HTML or an accessible PDF format.

**<u>SmartStop Self Storage, Inc.</u>**

15.     Defendant SmartStop Self Storage, Inc. operates as a public self storage company and a non-traded real estate investment trust (REIT). The Company focuses on acquisition, ownership, operations, and development of the self-storage industry. SmartStop facilities offer affordable, accessible and secure storage units for residential and commercial customers, and was recently ranked the 7th largest owner/operator in the United States by Mini-Storage Messenger Magazine. SmartStop Self Storage serves customers throughout North America. The Defendant owns and/or operates hundreds of

---

[1] July 2017

Smart Stop self-storage facilities in The United States and Canada. There are nearly 20 Smart Stop self-storage facilities located in Florida.

16.     Defendant SmartStop Self Storage, Inc. is a subsidiary of Extra Space Storage Inc. which is a publically traded company and, fully integrated, self-administered and self-managed real estate investment trust. As of 2015, Extra Space owned and/or operated 1,335 self-storage properties in 36 states, Washington, D.C. and Puerto Rico. As of 2015, Extra Space owned and/or operated 1,335 self-storage properties in the United States and Puerto Rico. Extra Space's properties comprise approximately 885,000 units and approximately 99.8 million square feet of rentable space.

## FACTS

17.     At all times material hereto, Defendant was (and is) an organization which (through its various subsidiary companies) owns and operates a chain of retail self-storage facilities. As the owner and operator of self-storage facilities open to the public, Defendant is defined as a "Public Accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates (an "other service establishment," 42 U.S.C. §12181(7)(F) and 28 C.F.R. §36.104(2).

18.     Each SmartStop Self Storage facility is open to the public and each is a place of public accommodation under the definition of "other service establishment" and is therefore subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(F) and 28 C.F.R. Part 36. SmartStop Self Storage facilities are also referenced throughout as "Place(s) of Public Accommodation," "SmartStop Self Storage facility(ies)," or "self-storage facility(ies)."

19.     The Defendant controls, maintains, and/or operates a collection of related web pages, including multimedia content, typically identified with a common domain name, and published on at least one web server; namely the domain located at a website called www.smartstopselfstorage.com ("Website").

20.     Defendant's Website is offered by Defendant as a way for the public to reserve and/or pay for storage online.

21.     Defendant's Website also permits the public to obtain information on SmartStop Self Storage facilities such as information on storage policies, information on packing supplies sold at SmartStop Self Storage locations, and other information the Defendant seeks to communicate to the public.

22.     For all of the reasons as delineated herein, clearly, the Website is an integral part of the goods and services offered by Defendant. By this nexus, the Website is characterized as a Place of Public Accommodation pursuant to Title III, 42 U.S.C. §12181(7)(F) of the ADA[2].

23.     Within Defendant's Website the public can access provided electronic documents on demand. Defendant offers the public access to its electronic documents online though Portable Document Format, which is commonly referred to as "PDF documents or PDFs."

---

[2] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

24.     Blind and/or visually impaired persons require assistive devices (such as screen reader software) to read/comprehend content when it is provided in Portable Document Format, or "PDF documents."

25.   The PDF documents offered on Defendant's Website are not coded for accessible to screen reader software.   Therefore, online demand viewing of PDF documents on Defendant's Website is not an option available to persons with vision disabilities.

26.   The fact that Plaintiff could not comprehend Defendant's documents left Plaintiff excluded from accessing the packing supplies and self-storage services Defendant offers to the public and further left them with the feeling of segregation, rejection, isolation, and unable to participate in his own business affairs (such as renting a self-storage unit) in a manner equal to that afforded to others who are not similarly disabled.

27.     Plaintiff is a customer who needs to rent a self-storage space to store his personal items, such as offered by Defendant through its self-storage facility physical locations, particularly as offered in the SmartStop Self Storage storage location at 10451 NW 33rd Street, Doral, Florida 33172, which is close to Plaintiff's home.

28.     In February 2018, Plaintiff attempted on several occasions to communicate with the Defendant by calling Defendant's customer service number (available through Google search online) to inquire about SmartStop Self Storage options at its location 10451 NW 33rd Street, Doral, Florida 33172 with the intent of renting a storage space at that location.   However, SmartStop Self Storage representative failed to fully assist Plaintiff referred them to Defendant's Website for the requested information.

29.     Following communications with Defendant's representative, Plaintiff attempted to utilize Defendant's Website as instructed by Defendant's representative.

30.     Plaintiff utilizes screen reader software, which when utilized allows him (as a blind individual) to communicate with internet websites and the ability to access/comprehend PDF documents.

31.     When Plaintiff tried to interact and engage the Defendant through its Website, he encountered a Website that was not designed with accessibility (for the disabled) in mind.

32.     Defendant's Website is not designed with consideration for Universal design. Universal design is necessary so visually impaired individuals who use screen reader software can access the Website[3].

33.     Furthermore, Defendant's Website does not have the sign of website accessibility[4], which standard is WCAG 2.0.

34.     Defendant's Website was inaccessible so Plaintiff could not (among other things):

    a.  find out what information was needed to bring to Defendant's self-storage location in order to rent a storage unit, and
    b.  find out the availability, size and cost of self-storage units offered by Defendant

35.     Plaintiff has tried and has been unable to access and comprehend the Defendant's Website and the electronic documents located therein. By denying Plaintiff

---

[3]  "Universal design is the design of products and environments to be usable by all people, to the greatest extent possible, without the need for adaption or specialized design."  Kalbag, Laura (2017), by *Accessibility for Everyone*, (p. 5)

[4] 

the opportunity to comprehend PDF documents due to Plaintiff's disability (visual impairment), Defendant has denied Plaintiff (and other blind and visually impaired individuals) the opportunity to participate in or benefit from the goods and services Defendant offers to the public (non-disabled persons and persons who are not visually impaired).

36.      Plaintiff's expectation of renting a self-storage unit and managing that unit through on-line bill pay was destroyed since he could not access Defendant's Website at all to avail himself of the latest services which Defendant offers to the public.

37.      The fact that Plaintiff could not access the Defendant's Website and the PDF documents contained therein left Plaintiff excluded from accessing the SmartStop Self Storage facilities goods and services and further left him with the feeling of segregation, rejection, isolation, and unable to participate in his own business affairs (such as in this case renting a self-storage unit) in a manner equal to that afforded to others who are not similarly disabled.

38.      Plaintiff's inability to communicate with/comprehend Defendant's Website and the PDF documents contained therein  has impeded Plaintiff's access to Defendant's self-storage facilities has resulted in a *virtual barrier* which has created an *effective barrier* to access to Defendant's self-storage facilities and to the goods and services offered by Defendant.   Plaintiff's inability to fully use Defendant's Website and his inability to access Defendant's PDF documents has hindered, impeded and inhibited Plaintiff's access to Defendant's self-storage locations. Plaintiff has suffered as a result and has suffered particularized harm and an injury in fact.

39.     While the Plaintiff could certainly "roll" over to a SmartStop Self Storage location (10451 NW 33rd Street, Doral, Florida 33172), but without access to information on storage units for rent, prices, and packing supplies available and what is needed to rent a self-storage unit (due to the Website's lack of accessibility), as a blind individual confined to a wheelchair, Plaintiff faces a great deal of uncertainty in undertaking such an outing.  It is a daunting task for Plaintiff to arrange for travel in his wheelchair along with his personal items he wishes to store, because he lacks basic understanding of the "who, what, and how" to physically travel the SmartStop Self Storage location, secure a storage unit, and store his personal belongings.  It is essential for Plaintiff to be able to plan travel to Defendant's self-storage location with information he should be able to obtain through Defendant's Website.

40.   By denying Plaintiff the opportunity to comprehend documents and Website due to Plaintiff's disability (visual impairment), Defendant has   denied Plaintiff the opportunity to participate in, or benefit from, the good and services Defendant offers to the public (non-disabled persons and persons who are not visually impaired).

41.   Plaintiff continues to desire to patronize Defendant, but is unable to do so, as he is unable to effectively communicate with Defendant in order to obtain access to Defendant's physical self-storage locations in order to participate in the goods and services Defendant offers to the public. Plaintiff will suffer continuous and ongoing harm from Defendant's omissions, policies, and practices set forth herein unless enjoined by this Court.

42.     On information and belief, Defendant has not initiated an ADA policy for effective communication to insure full and equal use of their business by individuals with disabilities.

43.     On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of its electronic documents and Website (in general).

44.     On information and belief, Defendant has not offered any form of electronic documents in an accessible format for blind or visually impaired individuals.

45.     On information and belief, Defendant has not created a Website page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will have its Website and the PDF documents therein, accessible to the visually impaired community.

46.     Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided at its self-storage facilities.

47.     All Public Accommodations must insure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities.

48.     On information and belief, Defendant is aware of the common access barriers and barriers to effective communication within its Website and electronic documents which prevent individuals with disabilities who are visually impaired from the means to comprehend the information presented therein.

49.     Defendant and alike self-storage facilities are fully aware of need to provide full access to all visitors to its Website.[5]

50.     Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired and result in punishment and isolation of blind and low vision individuals from the rest of society.

51.     According to the National Federation for the Blind[6], there are over seven million Americans with visual disabilities (which makes up 2.3% of the population), and there are 486,400 individuals with visual disabilities living within the state of Florida[7].

52.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for declaratory judgment and injunctive relief is his only means to secure adequate redress from Defendant's unlawful and discriminatory practices.   No price can be put on Plaintiff's inability to shop for himself.

53.     Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of Plaintiff's rights is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

54.     Plaintiff has retained the civil rights law office of Scott R Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

---

[5] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g.
(https://www.digitalcommerce360.com/2016/04/01/web-accessibility-what-e-retailers-need-know/),
 (www.retailingtoday.com/article/lawsuit-highlights-importance-ada-compliance )
[6] See  https://nfb.org/blindness-statistics
[7] 486,400 is the number of non-institutionalized (male and female, all ages and ethnicities) reported to have a visual disability in 2015; see https://nfb.org/blindness-statistics

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

55.     Plaintiff Juan Carlos Gil re-alleges and incorporates by reference the allegations set forth in ¶¶s 1-54 above.

### Requirement for Effective Communication

56.     It is irrefutable that the ADA and implementation of ADAAG requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective.

57.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems."   28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

58.     Section   28   C.F.R.   §36.303(c)   specifically   states   that   public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

59.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

60.     Defendant's Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication.

**Defendant's Business is A Place of Public Accommodation**

61.     By virtue of the fact that SmartStop Self Storage facilities are open to the public, each self-storage facility is a place of public accommodation subject to the requirements of Title III of the ADA; 42 U.S.C. §12181(7)(F).  The ADA prohibits any and all barriers which would limit access by the visually impaired to such places of public accommodation.

62.     Additionally, because SmartStop Self Storage facilities sell merchandise (packing supplies and locks) to the public, each self-storage facility is a place of public accommodation subject to the requirements of Title III of the ADA; 42 U.S.C. §12181(7)(E).

63.     The virtual barrier to access is just as real as a physical barrier to access, for without information as to the goods and services offered and ability to investigate and choose a self-storage facility, the visually impaired have no access to the goods and services of that self-storage facility, which is a Place of Public Accommodation.

**The Website As A Place of Public Accommodation**

64.     Consistent with the text and legislative history of the ADA, the Department of Justice (Department) has long affirmed the application of Title III of the ADA to websites of public accommodations[8]; see Statement of Interest filed by the Department in *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #23].

---

[8] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at

65.     District courts within the Eleventh Circuit that have considered the question of whether websites are public accommodations have uniformly held that websites are subject to the ADA if a plaintiff can establish a nexus between the website and the physical premises of a public accommodation. See, *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #32] Order Denying Defendant's Motion for Summary Judgment, quoting from *Andres Gomez v. Bang & Olufsen Am., Inc.,* No. 16-23801 at 9 (citing *Rendon v. Vallycrest Prods., Inc.* 249 F.3d 1279 (11th Cir. 2002) for the proposition that if a plaintiff establishes some nexus between the website and the physical place of public accommodation, the plaintiff's ADA claim can survive a motion to dismiss).

66.     The Courts have held that, when services available on an internet website have a connection to a physical Place of Public Accommodation, that website falls within the ADA's *Place of Public Accommodation* requirement; *Peoples v Discover Financial Services, Inc.*, 2009 WL 3030217, 2 (E.D. Pa. 2009).

67.     The www.smartstopselfstorage.com website is a *Place of Public Accommodation* pursuant to 42 U.S.C. §12181(7)(F) as an integral part of each SmartStop Self Storage facilities by providing the public information on the various

---

www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

locations of SmartStop Self Storage facilities, and the self-storage options and prices at each facility on the Website.

68. In addition, Defendant's representatives within SmartStop Self Storage facilities have referred customers to Defendant's Website for additional information, as the Website provides information regarding self-storage facility/ office sizes, features, prices, and locations, such that the Website is an integral part of the public's needs with respect to SmartStop Self Storage business.

69. By SmartStop Self Storage representatives referring the public /visually impaired individuals to the SmartStop Self Storage Website for reference to information on goods and services instead of providing such information at its physical self-storage locations, the Website has been rendered an integral part of SmartStop Self Storage physical locations. Thus, the failure of that Website to be accessible to visually impaired individuals impedes visually impaired individuals (such as Plaintiff) from fully accessing SmartStop Self Storage physical business locations.

70. It is clear that the ADA applies to the Defendant's Website, as the Website **is** a *Place of Public Accommodation* for the following reasons: (1) the statutory construction of the ADA demonstrates its applicability is not limited to physical "brick and mortar" locations; (2) Congress' intent was for the ADA to be responsive to changes in technology; and (3) the Department of Justice has interpreted the ADA to apply to websites.

71. The ADA's legislative history makes it clear that Congress intended the ADA to adapt to changes in technology, such as the technology afforded through websites, the internet and e-commerce. Congress has stated that "the types of

16

accommodation and services provided to individuals with disabilities . . . ***should keep pace with the rapidly changing technology of the times.***" *Nat'l Ass'n of the Deaf v. Netflix, Inc.,* 869 F. Supp. 2d at 200 (D. Mass. 2012)[9] *Netflix,* (citing H.R. Rep. 101-485(II), at 108 (1990)); *Nat'l Fedn. of the Blind v. Scribd Inc*., 97 F. Supp. 3d, 574 (same) (D. Vt. 2015)[10] (emphasis added). For example, Congress identified "information exchange" (the principal function of a website) as an important area of concern where expanding technology would be subject to the ADA. *Scribd,* 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(II), at 108 (1990)).

72.     Recent case law supports that the intangible barriers presented within Defendant's Website and PDF documents therein are violative of the ADA.  In rendering his decision that Winn Dixie Stores, Inc.'s website contained barriers to access which are prohibited by the ADA[11], Judge Scola drew upon the decision in *Rendon v. Valleycrest Prods., Inc.* 294 F.3d 1279, 1284 n.8 (11th Cir. 2002), where the Eleventh Circuit noted that the plain language of Title III of the ADA covers both tangible, physical barriers that prevent a disabled person from accessing a public accommodation, as well as "**intangible barriers**, such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges . . . ." 249 F.3d at 1283 **(emphasis added)**.

---

[9] the plaintiff sued Netflix, Inc., ("Netflix") under Title III of the ADA based on Netflix's failure to provide equal access to its video streaming website "Watch Instantly" for deaf and hearing impaired individuals. There, the plaintiff alleged the website itself was a place of public accommodation because the website qualifies as a "place of exhibition and entertainment," "place of recreation," "sales or rental establishment," and "service establishment" as enumerated by the ADA. *Id.* at 200.

[10] wherein the plaintiff filed a complaint alleging a violation of the ADA against Scribd, Inc., ("Scribd"), in that it provided a digital library operating reading subscription services on its websites and mobile app which were incompatible with reader software and denied blind persons' access to Scribd's services

[11] *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #63].

73.     At the present time and since the Website's inception, Defendant has provided inadequate service, and ineffective communications and services.  Plaintiff's injury is real, has occurred and is continuing. Plaintiff's injury will continue to occur until it is absolutely clear that Defendant's wrongful behavior is remedied.

74.     Recent Case law supports the Plaintiffs position, that companies which that have not fully updated their websites and PDF documents therein so that they are accessible to visually impaired individuals are not immune to redress. See, *Lucia Markett v. Five Guys Enterprises LLC* No. 17-cv-788 [DE #33] Order Denying Defendant's Motion To Dismiss, where the Honorable Judge Katherine B. Forrest rejected the defendant's argument that Five Guys' in-process renovation of its website which will eventually result in its website being accessible to plaintiff and other blind and visually impaired individuals (after the renovation is complete) rendered plaintiff's claim as moot.

75.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

76.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that

making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

77.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

**Barriers to Access**

78.     As a result of the inaccessibility of Defendant's Website and failure of the PDF documents contained therein to be accessible to visually impaired individuals, those individuals are denied full and equal access to SmartStop Self Storage physical locations as Defendant has made available to the public through the information provided on Defendant's Website, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

79.     Types of website programming errors include (but are not limited to) *(i) Programming Error Types* ("PETs"), which are easily identifiable and correctable, *(ii) Programing Alert Error Types* ("PATs"), which are prone to making the website inaccessible, and *(iii)* Design Errors ("DE's") that create empty headings and text fields that create confusion for a user that rely on the 'TAB' key to navigate a web page.

80.     A sampling review of  Defendant's Website revealed that the Website is not functional for users who are visually impaired.  The Website contains several types of PETs (easily identifiable and correctable), which occur throughout the Website such as:

1) The language of the document is not identified,
2) Image alternative text is not present, and
3) A form control does not have a corresponding label.
4) Alternative text is likely insufficient or contains extraneous information,
5) An event handler is present that may not be accessible,
6) A heading level is skipped,
7) Flash content is present,
8) Adjacent links go to the same URL,
9) A link contains no text, and
10) Alternative text is likely insufficient or contains extraneous information.

81.     Further, the Website does not offer include the universal symbol for the disabled[12] which would permit disabled individuals to access the Website's accessibility information and accessibility protocols.

82.     There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. Incorporating the basic Auxiliary Aids and Services components to make the Website and PDF documents contained therein accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

**PDF Documents**

83.     Defendant's website contains one or more links to a PDF attachment.   An example   of  one  such  link  is  the  Off  Road  Vehicle  Storage  Guide  at https://smartstopselfstorage.com/media/SmartStop-Off-Road-Storage-Checklist.pdf.   The

---

[12]  , or HTML "Accessibility" link for those individuals who are visually impaired

PDF attachment's flat surface does not contain accessible coding. The PDF document does not include a text-based format (or equivalent). Defendant has not added 'alt[13]' tags or long descriptions for the PDF within its website. The PDF attachment has not been provided in HTML or with a text equivalent, and is not a webpage[14], therefore, it is inaccessible to the visually impaired.

84.     In order to meaningfully access PDF documents, blind and visually impaired individuals require that PDF documents be saved in an accessible format. Much of the content provided in PDF format within Defendant's Website is not accessible for persons with screen readers.

85.     Providing PDF documents in a format that can be recognized by screen reader software and therefore making those PDF documents accessible to the visually impaired would not result in any undue burden to Defendant and would not fundamentally change the nature of Defendant's products and services.

86.     The failure of Defendant's PDF documents to be accessible impedes Plaintiff (and other similarly situated visually impaired individuals) from fully accessing the financial services, goods and accommodations provided by Defendant and in so doing, Defendant has discriminated against the visually impaired.

**Violations of the ADA**

87.     The Defendant has violated the ADA (and continues to violate the ADA) by creating barriers for individuals with disabilities who are visually impaired and who

---

[13] 'alt' refers to 'alternative text'

[14] (which is an internet document usually in HTML)

require the assistance of interface with screen reader software to comprehend and access Defendant's electronic (PDF) documents and Website (in general). These violations are ongoing.

88.     As a result of the inadequate development and administration of Defendant's electronic (PDF) documents and Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

89.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Juan Carlos Gil injunctive relief; including an order to:

a)  Require Defendant to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of the www.smartstopselfstorage.com website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its Website.

b)  Require Defendant to take the necessary steps to make the Website  readily accessible to and usable by visually impaired users, and during that time period prior to the www.smartstopselfstorage.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on the Website until such time that the requisite modifications are made, and

c)  Require Defendant to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Website for purposes of viewing and locating SmartStop Self Storage facilities (locations),

becoming informed of storage units available for rent (size and price and availability) and reserving a storage unit, and of viewing PDF documents provided to the public within Defendant's Website. During that time period prior to the Website's being designed to permit individuals with visual impairments to effectively communicate, requiring Defendant to provide an alternative method for individuals with visual impairments to effectively communicate so they are not impeded from purchasing such goods and services made available to the public through Defendant's Website and through SmartStop Self Storage physical business locations.

90.     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant SmartStop Self Storage, Inc.

## **DEMAND FOR RELIEF**

**WHEREFORE,** Plaintiff Juan Carlos Gil hereby demands judgment against Defendant SmartStop Self Storage, Inc. and requests the following injunctive and declaratory relief:

   a) The Court issue a declaratory judgment that Defendant has violated the Plaintiff's rights as guaranteed by the ADA;

   b) The Court enter an Order requiring Defendant to update its www.smartstopselfstorage.com website to remove barriers in order that individuals with visual disabilities can access the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

c) The Court enter an Order requiring Defendant to update all PDF documents made available to the public to remove barriers in order that individuals with visual disabilities can access the PDF documents to effectively communicate with Defendant to the full extent required by Title III of the ADA;

d) pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a), enter an Order for permanent injunction which directs Defendant to take all steps necessary to bring the PDF documents which it provides on its electronic media into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that all PDF documents are fully accessible to, and independently usable by, blind and low sighted individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

e) The Court enter an Order requiring Defendant to clearly display the universal disabled logo[15] within its Website, wherein the logo would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.   and sign of website accessibility[16] (standard WCAG 2.0) within its Website.   Such a clear display is to

---



[15]

[16]

insure that individuals who are disabled are aware of the availability of the accessible features of the www.smartstopselfstorage.com website;

f) The Court enter an Order compelling Defendant to contract with an independent ADA expert/consultant for the purposes of that ADA expert/consultant review Defendant's policies, practices and procedures for five years commencing from the date of the Court's Order to insure that Defendant is in compliance with the ADA;

g) The Court enter an order requiring Defendant to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto;

h) The Court enter an Order requiring Defendant retain a qualified consultant acceptable to Plaintiff ("Mutually Agreed Upon Consultant") who shall assist it in improving the accessibility of its PDF documents so they are accessible to individuals with visual disabilities;

i) The Court require Defendant engage a (mutually agreed upon) Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's PDF documents continue to be accessible to individuals with visual disabilities;

j) The Court enter an Order directing Defendant to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow Defendant to undertake and complete corrective procedures to the Website;

k)  The Court enter an Order directing Defendant to establish a policy of web accessibility and accessibility features for the Website to insure effective communication for individuals who are visually impaired;

l)  The Court award damages in an amount to be determined at trial;

m) The Court to award Plaintiff reasonable litigation expenses and attorneys' fees; and

n)  That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 1st day of March, 2018.

Respectfully submitted,

_s/Scott Dinin_
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
_Counsel for Plaintiff_